**John Patrick Dolan**
45-290 Fargo Street
Indio, CA 92201
760-775-3739
dolanlawoffices@gmail.com
Attorney for Defendant
JOHN DAVID YODER

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO.  2:13-CR-000368-JAD-VCF |
| Plaintiff, | |
| v. | |
| JOHN DAVID YODER, | **DEFENDANT'S MEMORANDUM IN AID OF SENTENCING** |
| Defendant. | |

Defendant JOHN DAVID YODER, by and through undersigned counsel, hereby provides this honorable Court with the instant Memorandum in Aid of Sentencing.  For the reasons set forth below, and consistent with the Plea Agreement, Mr. Yoder respectfully requests that this Court sentence him to no greater than 240 months' imprisonment, as calculated with the variance credits, to run concurrent with his current California state sentence, a lifetime of supervised release, restitution as agreed upon in the Plea Agreement, and no fine.

Dated:  January 7, 2021

JOHN PATRICK DOLAN

_JOHN PATRICK DOLAN_
Attorney for Defendant
JOHN DAVID YODER

**MEMORANDUM IN AID OF SENTENCING**

As set forth on page 14 of the Plea Agreement,

> [T]he parties make a binding recommendation that the defendant be
> sentenced to 288 months in custody. The parties also agree to recommend
> this sentence be served concurrently with the sentence the defendant is
> currently serving in *People v. David Yoder*, Riverside Superior Court case
> no. RIF1501674. Additionally, the parties agree to jointly recommend that
> the defendant be given credit for the time he has been in custody starting
> from April 14, 2015, and that ***any credit be accounted for pursuant to a
> variance***. The USAO agrees to not oppose the defendant's request to serve
> both his state and federal sentences in federal prison.

(Emphasis added).

As of January 11, 2021, Mr. Yoder will have accumulated **5 years, 8 months, 29 days (69.0 months)** of credit under this provision of the Plea Agreement none of which will be credited toward Mr. Yoder's federal sentence. *See* 18 U.S.C. § 3585(b)(2) ("A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences . . . as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed[] *that has not been credited against another sentence*.") (Emphasis added); *see also* Hank Sadowski, Former BOP Regional Counsel, *Federal Sentence Computation Applied to The Interaction of Federal and State Sentences*, Champion 38 (Apr. 2014) ("Section 3585(b) prohibits prior custody credit when the time in custody was awarded towards another sentence. . . . Location of presentence detention (federal, state, or foreign) is not relevant in deciding whether prior custody credit will be awarded.") (Footnotes omitted).  To account for this, the parties stipulated to a downward variance.  However, to fully account for Mr. Yoder's prior custody credit against the 288-month sentence—as the parties intended—would require the Court to vary below the 20-year (240-month) mandatory minimum sentence, which this Court might not have the authority to do.  Accordingly, while an imperfect resolution of what the parties intended, this Court should impose no more than the 20-year mandatory minimum term of imprisonment.

**To be sure, the Court should be aware that in negotiating the Plea Agreement, the parties intended that Mr. Yoder's federal sentence would be served concurrently with his state sentence *and* co-terminate with the same.** Unfortunately, despite the fact that Mr. Yoder's state offense is relevant conduct to his federal matter, he is precluded from receiving any credit toward his federal sentence for the time he has been serving on the state matter. *See* 18 U.S.C. § 3585(b)(2); Sadowski, *supra*. Per the California Department of Corrections, Mr. Yoder's state sentence is projected to terminate in March 2034. Thus, should this Court impose a 20-year sentence concurrent with his state sentence, Mr. Yoder will still be required to serve approximately 3.6 additional years in federal custody over and above the expiration of his state sentence—and that is so even assuming Mr. Yoder receives full good conduct time credit. He will thus have served a total of over 22.7 years in state and federal custody for his offense conduct,[1] inclusive of good conduct time credit. This, again, is not the result the parties intended; they intended that the sentences run concurrently *and be coterminous.*[2]

A 20-year sentence is, of course, a significant sentence, but is not greater than necessary to achieve the statutory purposes of sentencing (even if it results in a greater length of total imprisonment than what the parties intended) and does not create an unwarranted sentencing disparity. The graph below illustrates the sentencing distribution in select sentencing ranges for similarly situated individuals and was derived from the U.S. Sentencing Commission's publicly available datafiles spanning fiscal years 2006 through and including 2019.[3] According to the Commission's sentencing data, there were 209 individuals sentenced under USSG §2G2.2, with a Total Offense Level (TOL) of

---

[1] This calculation takes into account that Mr. Yoder was first arrested on January 30, 2015 (PSR at 2) and assumes he will be released on or about November 2, 2037 with full good conduct time credit.

[2] In point fact, upon information and belief, in order to achieve the intent of the parties the federal sentence would have to be no greater than 184 months in order to be conterminous with the state sentence.

[3] *See* U.S. Sentencing Commission, Datafiles (2006-2019), available at https://www.ussc.gov/research/datafiles/commission-datafiles.

DEFENDANT'S SENTENCING MEMORANDUM                    3

43, and who did *not* receive government-sponsored motion for a departure.[4]  As indicated by the yellow column, exactly 35 of the 209 individuals received a sentence of at least 240 months but no greater than 300 months.  Exactly 37 received a sentence less than 240 months, and 137 received a sentence of at least 300 months or greater.



Sentences Imposed within Select Ranges Nationwide
2G2.2, TOL 43, Any CHC, No 5K/Rule 35 (n=209)
Source: U.S. Sentencing Commission Datafiles (2006-2019)

Of course, these data do not include any sentences imposed in the age of COVID-19. Preliminary indications are that federal sentences are dropping dramatically both in frequency and severity.  *See* Prof. Douglas Berman, "US Sentencing Commission Releases Data Revealing COVID's Impact on Federal Sentencings," Sentencing Law and Policy Blog, Oct. 27, 2020 ("latest USSC data show that the number of sentences imposed in the first COVID quarter (April to June 2020) dropped about 40% and the length of the sentences imposed in this period drop over 20%"), at

---

[4] While Mr. Yoder is in Criminal History Category (CHC) V, *see* PSR at 15, ¶ 70, it does not affect his Guideline sentence, which is the same for all those with a TOL of 43 regardless of CHC. Accordingly, this analysis includes offenders of all CHCs.

1  https://sentencing.typepad.com/sentencing_law_ and_policy/2020/10/us-sentencing-commission-

2  releases-data-revealing-covids-impact-on-federal-sentencings.html.

3       Reinforcing the seriousness of the sentence is the fact that, per the Commission's latest Quarterly

4  Data Report covering the period from October 1, 2019 through June 30, 2020, a sentence of 240 months

5  is over twice the average sentence imposed on child pornography offenses generally (102 months), is

6  significantly greater than the average (200 months) and median (180 months) sentences for sexual

7  abuse, and is even greater than the median sentence imposed for murder (238 months).  *See* U.S.

8  Sentencing Comm'n, Quarterly Data Report-3[rd] Quarter, tbl. 6 (Oct. 2020), https://www.ussc.gov/

9  sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/quarterly-sentencing-

10  updates/USSC_Quarter_ Report_3rd_FY20.pdf.

11

12       Finally, given the deleterious effects of extended incarceration on life expectancy, there is a high

13  likelihood Mr. Yoder will die in prison if not from the coronavirus,[5] then as a result of a reduced life

14  expectancy.  According to a published, peer-reviewed study by Dr. Evelyn J. Patterson, there is, on

15  average, "a 2-year decline in life expectancy for each year served in prison."[6] Dr. Patterson's findings, to

16  be sure, are consistent with findings by the U.S. Department of Justice itself.[7]

17

18       Mr. Yoder is currently 49.7 years of age.  According to the Social Security Administration, he

19  has 32.1 years of life left, i.e., he is expected to live to 81.8 years of age.[8] This estimate, of course, does

20

21  ――――――――――

22  [5] See Evelyn J. Patterson, *The Dose Response of Time Served in Prison on Mortality: New York State, 1989-2003*, 103 Am. J. Pub. Health 523 (2013), available online,
https://ajph.aphapublications.org/doi/abs/10.2105/AJPH.2012.301148 (cited favorably in *United States v. Jenkins*, 854 F.3d 181, 186 n.2 (2d Cir. 2017); *People v. Contrearas*, 4 Cal. 5th 349,362-63 (Cal. 2018); *People v. Wines*, 323 Mich. App. 343, 351 n.6 (Mich. 2018)).

23

24

25  [6] *Id.* at 523.

26  [7] U.S. Dept. of Justice, Nat. Inst. of Corrections, *Correctional Health Care: Addressing the Needs of Elderly, Chronically Ill, and Terminally Ill Inmates* 9-10 (2004),
https://s3.amazonaws.com/static.nicic.gov/Library/018735.pdf (stressing that incarceration intensifies health problems of elderly inmates and accelerates aging processes).

27

28

[8] *See* Social Security Administration, *Retirements & Survivors Benefits: Life Expectancy*

not take into consideration the extended term of incarceration facing Mr. Yoder.  Accordingly, the chart below applies Dr. Patterson's finding that two years of life expectancy are lost for every year of imprisonment to Mr. Yoder. Assuming a life expectancy of 81.8 years in 2020 and reducing it by two years for every year of incarceration, ***Mr. Yoder likely will not survive a 20-year sentence.*** And this is without taking into consideration the additional, deleterious effects of COVID-19.



Life Expectancy for David Yoder Applying *Patterson Study*

*Calculator*, https://www.ssa.gov/cgi-bin/longevity.cgi (last visited July 23, 2020).

DEFENDANT'S SENTENCING MEMORANDUM

6

Defense Counsel requests that the Court take into consideration several factors regarding Mr. Yoder's background and behavior prior to final sentencing.

Mr. Yoder has <u>no criminal record</u> prior to his convictions in state court for the charges related to the instant case. He accepts responsibility for his actions and is hopeful to have the opportunity to participate in a federal prison sex offender treatment program. He acknowledges that while he himself did not participate in the production of child pornography, nor was any pornography found on any of his digital devices, his association towards and actions with his co-defendants rightfully resulted in the charges he pleads guilty to in the negotiated agreement before this Court.

During his over five years of incarceration thus far, Mr. Yoder has had no disciplinary actions against him. He has been a model inmate and there is no reason to believe that this behavior will change in the future. He has completed several programs while in federal custody (**EXHIBIT "A"**). He is anxious to participate in every program he is eligible for while in the custody of the Bureau of Prisons in order to better himself, ensure that there will be no inappropriate or illegal behavior upon his release and to prepare for his life outside of prison. The AUSA has agreed that they will not oppose a judicial recommendation that Mr. Yoder be housed in a federal prison to serve his concurrent sentences.

Mr. Yoder has strong family support which is shown in the attached letters of support from his uncle and his now deceased mother. He has also drafted a letter to the Court to provide a brief background and explanation of his involvement in the case at hand. (**EXHIBIT "B"**)

It is of important note that Mr. Yoder was scored for a Static-99R test on March 17, 2016 and the results placed him in the low-moderate risk assessment level for reoccurrence. **He was given a 6.6 percent chance of reoffending within 5 years**. (**EXHIBIT 'C'**)

In addition, Mr. Milt Sheetz, a former 26 year probation officer with the San Bernardino County Probation Department, prepared a psycho-social report. He determined that *"...It is not believed that the defendant's character is of a predatory nature or that he is a danger to the community."*

Mr. Sheetz referenced a report by clinical and forensic psychologist, Dr. Michael Kania. Dr. Kania completed an evaluation of Mr. Yoder on December 23, 2016, to determine his potential danger to the community and likelihood to reoffend and stated *"I am of the opinion that the likelihood that he would have been involved in inappropriate sexual behavior such as that charged, or that he would offend in the future, is extremely low. Certainly, his involvement with Boylover.org and his subsequent association with the other men charged, raise questions with regard to judgment."*(**EXHIBIT "D"**)

1
2
3          WHEREFORE, in light of the above, Mr. Yoder respectfully requests that this honorable Court
4   impose a sentence of no more than 240 months imprisonment as calculated with the variance credits,
5   lifetime supervised release as agreed upon by the parties in the binding Rule 11(c)(1)(C) Plea
6   Agreement; restitution as agreed upon in the Plea Agreement, and no fine.  Mr. Yoder further requests
7   that the sentence be ordered to run concurrently with his state sentence as also agreed upon in the Plea
8   Agreement.
9
10
11   Dated:  January 7, 2021                          JOHN PATRICK DOLAN
12
13                                                    JOHN PATRICK DOLAN
14                                                    Attorney for Defendant
                                                      JOHN DAVID YODER
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DEFENDANT'S SENTENCING MEMORANDUM                8

EXHIBIT "A"



# Certificate of Participation

*This is to certify that*

## John David Yoder

*has satisfactorily completed the requirements prescribed for*

## Building Self Esteem

Given on this, the _____29th_____ day of _____April_____, Two Thousand and _____Twenty_____

_____
Warden

_____
Authorizing Person



# Certificate of Participation

*This is to certify that*

## David Yoder

*has satisfactorily completed the requirements prescribed for*

## Victim Impact

Given on this, the _____8th_____ day of _____June_____, Two Thousand and _____Twenty_____

_____
Warden

_____
Authorizing Person

EXHIBIT "B"

December 13, 2019

Hon. Jennifer A. Dorsey
U.S. District Court , District of Nevada
Courtroom 6D
333 Las Vegas Blvd.
Las Vegas, NV 89101

Re: USA v Thompson et al
2:13-cr-00368-JA-VCF-2

Your Honor,

I am writing you regarding the plea that is before you in my case. I hope that I can adequately express my remorse as well as to put into context my participation in these crimes.

I was raised in a good family by most standards. My grandfather was an Administrative Law Judge in Washington, DC. My father was head of electronic research for the Naval Department and my mother a concert pianist and piano teacher. I was not physically abused as a child; however, I did suffer almost a complete lack of affection from both parents, especially my father. I have always felt a bit of an outcast and became determined to try to help children who had challenging circumstances such as my own, or worse.

As a gay man, I have always been involved with adult, long term relationships. I was vetted for the foster care of difficult children along with my partner, Stan Snider, and sixteen years ago adopted my now 23 year old son Cody. I also adopted my son Daniel after the court found that even with multiple eligible family members, not one of Daniel's birth family would agree to take this troubled boy in. I continued to help the "throw away" children that no one wanted as a foster parent from 2007-2015 in Riverside County. I have been vetted and carefully monitored as a foster parent from 2002-2015. In addition, I worked with children in special education services as an aide in Desert Hot Springs.

I came to know William Thompson through a friend who sold him custom shoes for modeling shoots. I was only aware that the photo shoots were "shirtless" but not child erotica or pornographic. I was invited to go to Mr. Thompson's beach house with my entire household including my son Cody, his friend Anthony (16) and younger brother Gabriel (14). This is the first time I met Mr. Thompson. I was wined and dined, and the boys were taken to arcades and given souvenirs and surfing clothes. I must admit that I did not have many friends and my life revolved around parenting my boys. The idea that a "big time" photographer was interested in me and my family was very flattering and a break from our ordinary routine. Anthony and Gabriel started modeling for Thompson.  I have never seen them model without being clothed.

Thompson later gave me a long story about being in the middle of a messy divorce and needing a place to stay anonymously so that his wife could not locate him. He had decided to

stay in Desert Hot Springs, CA. In September of 2013, I rented an apartment in my own name for Mr. Thompson, on a six month lease. I also registered a car for him in my own name, again under the guise that he was hiding out from his wife who was trying to ruin him. He told people his name was Jason Brock, that I was his brother, and that he was from Florida. He represented himself to the parents of the children he met as a legitimate photographer who works with sports sponsors and advertisers. He seemed legitimate to them and to me as well. Only much later did I find out that his request to me to rent the apartment came only two days before his first federal indictment. He never personally shared this with me.

Thompson never showed me his pornographic photos or videos. The only time that I saw any pornography was during my state trial when the prosecutor showed photos and a video of some of Thompson's victims that *I had never seen before and was not present for the shooting of.* Please note  that no child pornography was found on any of my digital devices and I have no search history of such.

My greatest mistake was what I did upon learning of Mr. Thompson's secret. When I found that his modeling gig was a ruse and in fact, he was a child molester and pornographer, I did nothing. It is inexcusable as a twice mandated reporter (foster parent and educator) that I failed to report Thompson and Harper's activities the moment I became aware of them. I am filled with shame and remorse that I did not act. I think about this daily and cannot believe that I allowed my own fear to control me. I simply allowed Thompson to bolt out of town as a fugitive and I wanted to put the horrors of what I now knew behind me, like a coward. I am deeply regretful and remorseful that I did this.

Your honor, I accept responsibility for my transgressions that clearly were an aid and benefit to Thompson and allowed him to exploit and harm children. I pledge to you that I will never in my lifetime fail to act to protect a child and will never harm a child myself.

I pray that you will consider my request to be placed in a Federal Prison with a sex offender program, should I be deemed appropriate by the proper persons in the Bureau of Prisons.

In addition, it has been brought to my attention that the Court has received several letters, allegedly on my behalf. I assure you that these letters from both Phil Neri and Attorney's Carter & Bashoff are not endorsed by me and in no way reflect my opinion.  I have contacted Mr. Neri and told him never to send the Court another letter "on my behalf".  It is my desire for the Court to accept my plea, unlike the opinions expressed in the letters.

Thank you for your consideration and time in reviewing this letter and the additional materials I have submitted to the pre-sentencing officer.

Respectfully,

John "David" Yoder

# GATEWAY SEMINARY

Biblical · Missional · Global

December 26, 2020

Honorable Jennifer A. Dorsey, Judge
US District Court
District of Nevada
333 Las Vegas Blvd South
Las Vegas, NV 89101

Judge Dorsey,

I am writing on behalf of John David Yoder as his Uncle with a plea from his family for your help in obtaining equity, justice and fairness in David's sentencing in the matter of case no 2:13-CR-000368-JAD-VCF.

David's father, who was in charge of electronic research for the U.S. Navy for over thirty years, passed away this May. His mother, my sister, Carol Yoder is in a care facility and not in a position to make this request. David's grandfather – a Federal Administrative Law Judge – has also passed away. Consequently, I am writing on behalf of David's family to ask for your considered review of the charges and consequent time of incarceration for David – that it be fair, equitable, proportional and constructive.

I ask for equity, fairness, proportionality and justice in David's sentencing and physical incarceration. David understood that in agreeing to the current plea he would be receiving a sentence concurrent with his state sentence and that he would be given credit for his pretrial incarceration. He has served much of that time in protective custody which has essentially been solitary confinement.

I am asking that your charges and recommendations reflect the agreement as it was understood, and that David be allowed to serve out his Federal sentence coterminous with the state sentence. I understand that the Federal Bureau of Prisons may interpret the plea agreement contrary to the spirit entered into by the parties - namely that David's 24 year sentence include six years variance credit for time already served.

Furthermore, in light of the severity and horror of David's co-defendant's crimes, and the more peripheral involvement that David engaged in, David's penalty should certainly not exceed theirs (I understand that co-defendant Harper – an active perpetrator and culpable of exponentially greater harm  - was sentenced to only one count and 24 years.)

In light of these circumstances, David's family is asking for fairness, equity, proportionality and justice.  We are confident you will stand with us in this.  We are asking that what David understood to be the spirit and goal of the plea – what he tells me is clearly stipulated and written into the plea itself -  namely, that David's federal sentence by served concurrently with the State's in order to achieve a similar exit date with his state sentence – be honored in his final sentencing.

David's family is particularly hopeful that David be allowed to serve his time in Federal custody where his safety can be more effectively assured and where he will have access to greater remedial help and programs.

Thank you, in advance, for your consideration and for the difficult work you do in pursuing justice and equity for all parties involved.

Sincerely,

John Shouse, M.Div., S.T.M., Ph.D.
Senior Professor of Christian Theology
Gateway Seminary
JohnShouse@aya.yale.edu
415-419-7611 (cell phone)

*Carol Yoder*
*Arbor Terrace of Johns Creek*
*3180 Karen White Drive*
*Suwanee, GA  30023*

January 7, 2020

The Honorable Jennifer A. Dorsey
United States District Judge
333 Las Vegas Boulevard South
Las Vegas, Nevada 89191
Reference Case :  USA versus Thompson et al

Dear Judge Dorsey

I am writing to ask your consideration to recommend that my son, John David Yoder, serve out his sentence in Federal custody where he can receive therapy and have access to remedial programs.

I know David has a caring heart.  He is generous, sensitive, thoughtful, and freely gives to others.  When I was recovering from a back injury David took over the cooking in our home and became a very, very good cook. Years later, I went to a school with him and it was obvious that others on the staff admired his dedication to be a good teacher and his bringing out the best in students.  David has worked long and tirelessly to help others. He has been a dedicated teacher and foster parent. He has worked to allow students to achieve their full potential.

As his Mother, I ask you to recommend that my son serve his sentence in Federal custody with the remedial and therapeutic resources that custody there would afford him.  I ask that you render a sentence that will allow David a constructive environment.  In a situation where so much harm has occurred, I pray that you may find it in your wisdom now to recommend a path that would allow for constructive resources and programs for my son that are available in federal custody.

I grieve for the sorrow that has happened and mistakes that were made.  With all my heart, as a mother, I ask you to allow for David to have access to resources for help and counseling that would be part of federal incarceration.

Sincerely,

Carol Yoder

CJY/jws  (dictated by Carol Yoder but editing help and help in preparation given in her presence by Carol Yoder's brother, John Shouse)

EXHIBIT "C"

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

MAR 2 5 2016

Maria Luja

BW
MAR 29 2016
BA

# MEMORANDUM TO THE
# SUPERIOR COURT OF CALIFORNIA
# COUNTY OF RIVERSIDE

| TO: | THE HONORABLE W. CHARLES MORGAN JUDGE OF THE SUPERIOR COURT | REGARDING: | JOHN DAVID YODER A498898 |
|---|---|---|---|
| DEPT: B301 | | ATTORNEY: | W. ROBINSON (DDA) J. DOLAN (PVT) |
| FROM: | GEORG FREITAG SENIOR PROBATION OFFICER | COURT NO.: | RIF1501674 |
| COURT DATE:  APRIL 29, 2016, 8:30 A.M. | | SUBJECT: | STATIC 99-R |

On February 17, 2016, the defendant was convicted of four counts of 288(a) PC (Lewd Act on Minor under 14 Years of Age), two counts of 266j PC (Transport Minor under 16 Years of Age for Lewd or Lascivious Act) a felony, two counts of 236.1(c) PC (Human Trafficking of Minor), one count of 32 PC (Accessory to Crime), and one count of 182(a)(1) PC (Conspiracy to Commit Felony), all felonies. The matter was referred to the Probation Department for the completion of a Static-99R assessment pursuant to Penal Code Sections 1203e and 290.06.

The required information needed to score the Static-99R was gleaned from District Attorney's Office Report #DAI2015027009 and supplemental reports, as well as a personal interview with the defendant on March 1, 2016.

Accurate prediction of the risk of reoffense requires use of a risk assessment instrument based on research studies which followed released sex offenders and identified factors associated with those who reoffended. Predictions of which sex offenders will reoffend are improved significantly when validated actuarial instruments are used to estimate risk. An actuarial instrument is a list of risk factors that when present increase the risk of sexual reoffense. Each item is statistically weighted for its contribution to overall risk. A total score, level of risk and probabilities of risk for offenders five and ten years after release can be determined. The Static-99R is the most widely used such instrument. Many research studies have proven its predictive accuracy. Research shows that the opinion of a professional after interviewing an offender (known as unstructured clinical judgment) is not an accurate way to predict whether a sex offender will reoffend.

There have been a large number of studies examining the sexual recidivism rates associated with Static-99 scores. Helmus, Hanson & Thornton (2009) summarized the results of 23 samples of sexual offenders (number of offenders in studies = 8,139) drawn from different countries including Canada, the United States, New Zealand,



ORIGINAL

A498898                                    RIF1501674                              John David Yoder

United Kingdom and Western Europe. Sexual re-offense on the Static-99R should be considered a measure of reconviction. These recent studies found that the ability of Static-99R to rank relative risk is reasonably consistent across samples and settings, but the observed recidivism rates vary across samples. Specifically, the average recidivism rates associated with each score are lower in contemporary samples (1990's and more recent) than in the samples used in the development of Static-99, which involved offenders who were primarily released during the 1970's and 1980's. Consequently, the developers of the Static-99 recommended that the original norms be replaced by new norms based on samples that are more recent, more representative, and larger than the original samples. This was completed in a 2009 update of the recidivism rates that now applies to scores from -3 to 10+.

The defendant, **John David Yoder**, was scored on the Static-99R, which is an actuarial measure of risk for sexual offense recidivism. This instrument has been shown to be a moderate predictor of sexual reoffense potential. The defendant received a total score of **3**, which places him in the **Low-Moderate** Risk Category for being convicted of another sexual offense, if he is released on probation. His risk on release from a prison sentence cannot be calculated until his age on release on parole is known, so the risk score stated herein is predictive of risk based on his age on the date of this pre-sentencing report. If the defendant has a prior conviction for a registerable sex offense, his risk score was calculated based on his age at release on the most recent registerable sex offense, or his age today if he had no prior registerable sex offense. There was a 2009 update of the recidivism rates that now applies to scores from -3 to 10+. The defendant scored a **3** on the Static-99R. The estimated risk for this score on the Static-99R is **6.6%** over five years.

Risk factors which are not measured by the Static-99R can raise or lower risk. These include things like substance abuse, personality disorder, deviant sexual interests, emotional identification with children, and self-regulation problems. A sex offender in a mandated treatment program will be assessed by a certified treatment provider using dynamic and violence risk assessment instruments designated by the SARATSO Committee. The combined risk will be used to determine appropriate levels of supervision and treatment.

///

- 2 -

A498898                           RIF1501674                          John David Yoder

**CREDIT FOR TIME SERVED:**

| | | |
|---|---|---|
| Local Time | 456 | days |
| PC 4019 Time | 0 | days |
| PC 2933.1 Time | 68 | days |
| Total Time Credited | 524 | days |

| Date(s) of Arrest | Date(s) of Release | Booking #(s) |
|---|---|---|
| 01/30/2015 | 04/29/2016 (Sentencing) | 201504272 |

DATED THIS 17TH DAY OF MARCH 2016.          Respectfully submitted,
GDF/gdf

                                                              MARK A. HAKE
**I HAVE REVIEWED THE ABOVE REPORT.**   CHIEF PROBATION OFFICER

BY: _____          BY: _____
    MELISSA A. GUZMAN                    GEORG FREITAG
    SUPERVISING PROBATION OFFICER        SENIOR PROBATION OFFICER
    951-358-4374                         951-358-7809

---

**ORDER**

☐   It is so ordered.

☐   Denied.

☐   Other: _____

_____

_____

**JUDGE OF THE SUPERIOR COURT** _____   DATED: _____

---

(Rev: 6/00)

- 3 -

# EXHIBIT "D"

RECEIVED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

MAY 17 2016

K. Boter

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

MAY 17 2016

L. walkeref w

AM
MAY 17 2016
BA

1  **John Patrick Dolan CA Bar #79969**
   **Dolan Law Offices**
2  45-290 Fargo Street
   Indio, CA 92201
3  Telephone: 760-775-3739
   Facsimile: 760-347-9413
4  Attorney for Defendant
5  **JOHN DAVID YODER**

6

7            SUPERIOR COURT OF CALIFORNIA
           COUNTY OF RIVERSIDE - BANNING BRANCH
8

9  PEOPLE OF THE STATE OF CALIFORNIA,      )   Case No.: RIF1501674
                                           )
10            Plaintiff,                    )
                                           )   **SENTENCING MEMORANDUM**
11        vs.                               )
                                           )   DATE:  May 18, 2016
12  JOHN DAVID YODER                        )   TIME:  8:30 a.m.
                                           )   DEPT:  B301
13                                          )
            Defendant                       )
14  _____)

15       Attached is a sentencing report prepared by Milton Sheetz, a twenty six year veteran of

16  the San Bernardino Probation Department.

17

18       In preparing his report, Mr. Sheetz interviewed Mr. Yoder, his family members and

19  significant others. An extensive review of the case file, trial transcripts, psychological and

20  employment reports contributed to his report and recommendations.

21

22       In addition, exposure calculations are attached showing the minimum, maximum and

23  mid-range sentencing exposures.

24

25  Dated: May 17, 2016                        Respectfully submitted,

26

27

28                                            _____
                                              John Patrick Dolan
                                              Attorney at Law

                                    -1-

April 17, 2016

PSYCHO-SOCIAL REPORT AND SENTENCING CONSIDERATIONS
JOHN DAVID YODER
DOB 4-24-71

Referred by John Patrick Dolan, Attorney for the defendant

Case:                   RIF1501674
Date of Arrest:         1-31-15
Date of Conviction:     2-17-16

| Convicted Charges: | Count 10 | PC 288(a) | felony |
|---|---|---|---|
| | Count 11 | PC 288(a) | felony |
| | Count 12 | PC 288(a) | felony |
| | Count 13 | PC 288(a) | felony |
| | Count 14 | PC 266j | felony |
| | Count 15 | PC 266j | felony |
| | Count 17 | PC 236.1(c) | felony |
| | Count 19 | PC 236.1(c) | felony |
| | Count 20 | PC 32 | felony |
| | Count 59 | PC 182(a) | |
| | | PC311.4(c) | |

| Date of Offenses: | November 2014 | ----- | December 2014 | Counts 10,11,12 |
|---|---|---|---|---|
| | November 2013 | ----- | January 2015 | Count 13 |
| | June 2013 | ----- | December 2014 | Counts 14,15,17,19,20 |
| | January 2013 | ----- | January 2015 | Count 59 |

The Offenses:

The defendant was arrested on 1-31-16 in connection with charges of Lewd Acts upon a child under the age of 14 and numerous charges surrounding the investigation of a child pornography ring. There were three co-defendants also charged in the offense. The defendant was convicted by a jury on 2-17-16 on the above counts.

Note: A motion for retrial has been filed and a federal indictment relating to these charges is pending. Therefore the defendant did not make a statement regarding the offenses for purposes of this report.

Sources Considered:

1. Transcripts from trial and investigator's interrogation
2. Work performance evaluation from employer
3. Interviews with defendant, defendant's family members and significant others
4. Psychologist's Report

Yoder, John David                                    2                                    April 19, 2016
RIF1501674

Family History as Reported by the Defendant on April 14, 2016

The defendant was interviewed on two separate occasions on 4-14- 16 and 4-18-16.  The
defendant, who goes by his middle name David, was born on 4-24-71 in Washington DC
to Max and Carolyn Yoder. He has an older brother Paul, born in 1968. David describes
his childhood as fairly normal. His brother achieved a higher degree of academic success,
but David still maintained good grades throughout his elementary, junior high and high
school years. His father earned a Master of Science Degree in electrical engineering from
Purdue University and worked as the head of the Electronics Division of the Office of
Naval Research in Arlington, Va. David's mother is a piano teacher and has taught music
from home throughout her adult life. He describes her as a very loving parent. There was
no physical, emotional or sexual abuse by either parent in the home. Between his father's
inordinately demanding work schedule and high family expectations, there were times
when he and his father were not terribly close in their relationship. In addition, the
defendant's brother was often touted as the more successful child. His father, now in his
late 70's suffers from Parkinson's Disease and has early stages of dementia. His mother
suffered a fall down a flight of stairs four years ago and sustained serious brain injury.
She now functions at a much lower level but is making a slow recovery. The parents are
able to remain in their home with the assistance of a home care nurse and housekeeper.
There was no alcohol or drug abuse in the home. The older brother earned a Ph.D in
electrical engineering from Cornell University and is currently a professor at Georgia
Tech University.  He is married with a 17 year-old son and a set of 15 year-old twins.
David reports that his brother often bullied him as achild but they enjoy a good
relationship today.

Statement of Defendant's Father and Mother

The defendant's parents, Max and Carolyn Yoder were interviewed by phone from their
home in Virginia on April 15, 2016. Mrs. Yoder was present but was only able to
communicate through her husband. The parents characterize the defendant's childhood as
being normal. The family was always active in their local Baptist Church. David
converted to Catholicism during college. There was no use of drugs or alcohol by either
parent or either of their children. There was always consistent discipline in the home.
Their older son had a great deal of success academically and graduated as valedictorian
of his class in high school. Although the parents made every effort to treat the boys
equally, Mr. Yoder believes that David may have felt that he couldn't match his brother's
successes. David was never a behavior problem nor did he act out in ways that caused
relational issues within the family. He was still a good student and pursued a college
education. It was not until he revealed that he was gay that their hearts were broken for a
time. Since then, they have accepted his lifestyle and he has visited them as frequently as
possible. Dave last spent time with them immediately following his mother's accident
and hospitalization. Mr. Yoder has always considered David to be quite kindhearted and

Yoder, John David                                  3                              April 19, 2016
RIF1501674

very passionate about his career helping troubled youth. David has never given them any
indication that he could be responsible for what has happened. Although David may have
stepped out of their expectations when he spent two years in Italy learning Italian and
revealed his alternate lifestyle, they never considered him to be anything but a positive
influence on those who have known him.

Mr. Yoder noted that they own the home where David lived. It was following media
coverage outside the home of the search that vandals virtually destroyed the home.

Statement of Defendant's Uncle

The defendant's maternal uncle, John S. was interviewed by phone from his home in
Northern California on April 16, 2016. He describes the defendant as having many
interests as a child. The family was quite close when the children were young, often times
gathering together with extended family several times per year. Mr. Shouse recalls that
David had interests in studying various kinds of animals and loved gourmet cooking. It
was when the David revealed that he was gay, that it was difficult for the entire family
because of their faith as Christians. Mr. Shouse is currently a professor at a college of
theology and he and David had conversations around this very subject. However, none of
these discussions put a wedge between them and it was a learning experience for the
entire family in many ways. Mr. Shouse reports that he was present at much of the trial.
He was surprised at the verdict having not heard any evidence that David was directly
involved in any pornography and that a police search of David's home and computer
failed to reveal anything.

Education

The defendant attended elementary school in Virginia with the exception of sixth grade
which was spent in England due to his father's brief assignment there for the government.
He returned to finish school in Virginia, graduating from Mclean High school in 1989.
He considered himself an individualist of sorts, not choosing to mingle with any
particular peer group. He did not participate in competitive sports and was not interested
in the arts. He was a member of the high school Latin Club and enjoyed studying about
animals. His grades were not such that he qualified for a scholarship but did do well
enough to be accepted into four high ranking colleges. He elected to attend Virginia Tech
with an interest in biology/pre-veterinarian studies. In 1991 through 1994, he attended
University of Maryland (College Park) where he changed his major, graduating with a
degree in Languages, specifically Italian and French. He studied abroad in Italy for two
years, becoming fluent in Italian. Subsequent to his return to the states, he attended
various programs in education and developed an interest in teaching children with
behavioral disorders from dysfunctional families.

Yoder, John David                                4                                April 19, 2016
RIF1501674

Sexual Orientation and Relationships

The defendant reports that he has always known that he was gay as far back as he can
remember. He never discussed these feelings with friends or family members for fear of
not being understood or being judged. It was not until he met another gay student in Italy
at age 21 that he was able to talk about it with anyone. Although this person was never an
actual partner, the defendant loved him as a dear and trusted friend. It was difficult to
reveal this information to his family and there were members of his family that were
troubled by his revelation. He has been in three significant domestic partner relationships
over the years. The first was from 1993 to 1997 with Richard, the second from 1998 to
2005 with Stanley and the third from 2008 to 2012 with Scott.

Statement of Defendant's Former Domestic Partner

Stanley S. was interviewed by phone on April 17, 2016. STanley reports that his
relationship with David began around late 1997or early 1998. In 2002, they began the
process of becoming adoptive parents to Cody, now 19 years old. At the time, Cody was
a challenge as he had come from a very dysfunctional home and had severe behavioral
disorders. He had spent a considerable amount of time in an institution. This put a strain
on the domestic partnership in that Cody required so much time and patience, plus the
arduous process of taking the necessary classes required to become adoptive parents. It
came down to Stanley asking David to choose between his commitment to Cody or to
him. In 2005, David and Cody moved to David's parents' home in Virginia where David
continued his training to become specialized in teaching troubled youth. Stanley never
observed any inappropriate contact or behavior between David and any other boys in his
care during the time they were together. He describes David as being totally committed to
helping troubled kids.

Employment History

Shortly after graduation from college, David took a job as an office manager/legal
secretary for a law firm in Washington D.C. He held that position for nearly four years
during which time he met his first partner, Richard. They decided to move to Southern
California in 1995 where the defendant became employed at Fed Ex in the Customer
Relations Department of the company's Same Day Service Division.  From 1998 through
2005 he worked as a specifications consultant for a high-end furniture manufacturer,
Therien Inc. in Los Angeles. In 1998, his partner left for New York and the defendant
became involved with his second partner, Stanley.

David returned to Virginia to live with his parents in 2005 in order to pursue a degree in
Special Education. He did not graduate but returned to California with his then adopted

Yoder, John David                                      5                              April 19, 2016
RIF1501674

Son, Cody. He became a Special Education Aide and Substitute teacher with the Palm
Springs Unified School District in 2007, transferring to an alternative school for children
with emotionally disturbed children called "the Center for Learning Development". The
program eventually closed and he was offered a job as an aide at the high school working
one-on-one with autistic children. He held that position until his arrest in these matters.

History of Substance Abuse

David reports that he has never used illicit drugs and was rarely exposed to that element
as a child or young adult. However, in 2013 he began experiencing problems in his
relationship with his partner, Scott and experienced financial problems. The
overwhelming responsibility of caring for the 4 boys placed in his home was beginning to
take a toll. In 2014, after the raid on his home, he started drinking whiskey on a daily
basis to calm his nerves. The authorities were looking for one of his codefendants. Most
of the boys, abandoned by their respective families were acting out verbally and
physically. His drinking was rarely to intoxication but frequently and consistent enough
to maintain his ability to cope. He concedes that his drinking soon accelerated to a
physical and psychological dependence. He was beginning to have "the shakes." David
hopes that wherever this case leads him, he will be offered a treatment program.

Collateral Information

A work performance evaluation from the Palm Springs unified School District dated
2-25-14 reflects satisfactory to outstanding performance in several areas as a one-on-one
aide to autistic students. His job title was classified as "paraprofessional Health".
Outstanding areas included work quality, productivity, safety, ability to work with others
and supervisory ability. He was "commended for his calm demeanor and his ability to
hold students accountable without overreacting".

Michael E. Kania Ph.D, clinical and forensic psychologist evaluated the defendant as to
whether or not he posed a danger to the community, or should he be convicted, a danger
of reoffending.  It was Dr. Kania's statement dated December 23, 2015 that "based on the
information gathered from Mr. Yoder (e.g. the absence of prior contacts with law
enforcement, the absence of substance abuse problems and the fact that he has maintained
long-term sexual relationships with adult partners), I am of the opinion that the likelihood
that he would have been involved in inappropriate sexual behavior such as that charged,
or that he would offend in the future, is extremely low. Certainly, his involvement with
Boylove.org and his subsequent association with the other men charged, raise questions
with regard to his judgment"

Yoder, John David                                        6                                    April 19, 2016
RIF1501674

The defendant has no known prior contacts with law enforcement.

SENTENCING CONSIDERATIONS:

Probation Eligibility (Rule 4.421):

Statutory provisions limiting or prohibiting a grant of probation do exist. The defendant is
statutorily ineligible for probation for a conviction of PC 266j. Therefore he is ineligible
for probation on all counts.

Circumstances in Aggravation:

    (a)  Facts relating to the crime include:

        The victims were particularly vulnerable

    (b)  Facts relating to the defendant:

        There are no facts relating to the defendant

Circumstances in Mitigation:  Rule 4.423

    (a)  Facts relating to the crime include:

        1. The defendant was a passive participant or played a minor role in the
           crime.

    (b) Facts relating to the defendant include:

        1.  The defendant has no prior criminal record

        2.  The defendant was suffering from a mental/physical condition that
           significantly reduced his culpability for the crimes.

Criteria Affecting Concurrent or Consecutive Sentences (Rule 4.425)

        None of the defendant's convicted offenses fall under mandatory consecutive
        Sentencing as pursuant to PC667. As to all other crimes subject to section
        PC 667.61, the Court has discretion to impose consecutive or concurrent
        sentence.

Yoder, John David                                7                              April 19, 2016
RIF1501674

Summary:

The defendant faces sentencing on multiple counts involving sexual crimes against minor
children and child pornography.  The defendant denies all charges for which he has been
convicted and did not make any statement pending a motion for retrial recently filed and
a pending federal indictment.

By all accounts, the defendant comes from a good and decent Christian family
background. There is no reported history or evidence to suggest that the defendant has
ever been abused in any way. Family members have been supportive throughout this
entire period and have not allowed their frustrations to cloud the issues at hand or to
interfere in the process. Most members of the family (including the defendant himself)
have held esteemed positions within their communities and are highly educated.

Based on my interview with the defendant, phone interviews with family members and a
review of collateral information, including a report from Michael E. Kania Ph.D and a
work performance evaluation from the defendant's prior employer, it is not believed that
the defendant's character is of a predatory nature or that he is a danger to the community.
This is a 45 year old man who has no prior record of any kind with law enforcement and
has been in long term intimate adult relationships. He was involved in helping troubled
children as a foster care provider, an educator and an adoptive parent for well over ten
years without incident. There is nothing in his background that points to a high risk of
reoffending. I was not able to find any direct information that shows that the defendant
was involved in or benefitted financially from the production any child pornography or
that he was a leader of any kind of child pornography "ring". There is no information to
suggest that he groomed the victims leading up to his arrest in these matters. I also failed
to find any information that shows that the defendant personally or willfully placed the
victims under duress or that he used force or violence against them. I do believe that his
association with the co-defendants and his increasing dependence upon alcohol led him to
a dark world after which he failed to do anything to stop it before it was too late.

Therefore it is respectfully recommended that based on the lack of any prior type of
criminal history, lack of any prior acts or history of violent behavior, lack of violence in
the current offenses, lack of indication of grooming behavior, and the fact that the
defendant was involved in long term adult intimate relationships, that the defendant has a
low risk of recidivism and that the defendant should be punished according to the low
term of state prison.

Respectfully Submitted,
Milt Sheetz   M.S.

**MILT SHEETZ**
**ALTERNATIVE SENTENCING**
**Assessment & Referral**
3800 Orange St., Suite 220
Riverside, CA 92501
Cell: (909) 855-7540
Office: (951) 683-2297
Fax: (866) 702-4011

EDUCATION:

| | | | |
|---|---|---|---|
| B.S. | Psychology | 1974 | Eastern Illinois University |
| M.S. | Counseling Psychology | 1979 | Eastern Illinois University |

SPECIALIZED TRAINING          National Drug Court Institute

RELATED EXPERIENCE

November 1985 - - 2011 (Retired)      San Bernardino County Probation Department

1985 - 1997  Varied assignments within the juvenile division to include investigations , field supervision and Community Service Team (diversion) unit.

1997 - 2001  Adult supervision

2001 - 2011  Adult Specialty Courts Unit as probation officer for the collaborative Treatment Court program.  Onsite court officer in Drug Court. Daily networking with community based treatment providers. Close interfacing with the Public Defender's Office, private attorneys and District Attorney's Office.  Assessment of client needs and development of treatment plans for defendants struggling with addiction to drugs/alcohol and other associated addictive disorders.

 1982- - - 1985                    Inland Empire Job Corps          San Bernardino, Ca

Vocational and residential counseling staff

1979- - - - 1981                    Winnebago County Probation Department   Rockford, Ill.

Juvenile intake probation officer/ supervision of informal probation caseload/referral of non-delinquent status offenders to community based resources.

1978- - - -1979                    Internship/ Champaign County Probation Department Urbana, Ill.

Adult and Juvenile Investigation and Supervision / Juvenile Detention Counselor

PROOF OF SERVICE
STATE OF CALIFORNIA, COUNTY OF RIVERSIDE

I, Kelli McDowell, declare:

I am over the age of 18, not a party to this action, and am employed in Riverside County at 45-290 Fargo St., Indio, CA 92201.

On January 8, 2021, I delivered a true copy of the **Defendant's Memorandum in Aid of Sentencing** to the following interested parties:

**AUSA Christopher Burton**
**AUSA Elham Roohani**
**501 Las Vegas Boulevard South**
**Suite 1100**
**Las Vegas, NV 89101**

**Attorney Jennifer Waldo**
**Gregory & Waldo**
**321 S. Casino Center Blvd.**
**Suite 112**
**Las Vegas, NV  89101**


_____X_____**(BY EMAIL)** I sent by EMAIL the above-referenced document on the date noted below to the appropriate email address.

_____**(BY HAND)** I served a copy of the above-referenced document on the date noted below to the appropriate party.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed on January 8, 2021.

Kelli McDowell