NICHOLAS A. TRUTANICH
United States Attorney
District of Nevada
Nevada Bar Number 13644
CHRISTOPHER BURTON
Nevada Bar Number 12940
ELHAM ROOHANI
Nevada Bar Number 12080
Assistant United States Attorneys
501 Las Vegas Blvd. South, Suite 1100
Las Vegas, Nevada 89101
Phone: (702) 388-6336
Christopher.Burton4@usdoj.gov
Elham.Roohani@usdoj.gov

*Attorneys for the United States of America*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 2:13-cr-00368-JAD-VCF |
| Plaintiff, | |
| vs. | **Government's Response to Defendant's Sentencing Memorandum (ECF No.** |
| JOHN DAVID YODER, | |
| Defendant. | |

**CERTIFICATION: The undersigned counsel acknowledges that this response is untimely.**[1]

### I.     Introduction

---

[1] Defendant's sentencing memo was filed on January 8, 2021, less than five court days prior to the sentencing hearing scheduled for January 11. *See* LCR 32-1(d). Despite defendant's sentencing memo being untimely, the government does not move to strike it or request a continuance of the currently scheduled hearing, but instead requests only that this Court consider this untimely response to the same extent it considers defendant's sentencing memo. The government also reserves the right to supplement its written response with oral argument at the scheduled sentencing hearing.

Defendant John David Yoder, a pedophile who sought like-minded people through the website "boylover.org," found William Thompson, Noland Harper, and Erick Monsivais. The four individuals then conspired to establish a child exploitation enterprise whereby they would lure young prepubescent boys to an apartment, paid for by Yoder and inhabited by Thompson, to sexually abuse them and produce child pornography. The defendants then distributed the child pornography they produced online via paid websites. During this same time, Yoder sexually abused an autistic 11-year-old child over whom he had been granted a temporary guardianship. As a result of these egregious crimes, and pursuant to the binding plea agreement, Yoder should be sentenced to twenty years' incarceration, followed by lifetime supervision with all of the conditions listed in the presentence investigation report to be imposed.

## II.     Factual Background

In 2013, Yoder met his co-defendant Thompson over the "boylover.org" website, an internet site that is dedicated to various discussions related to pedophilia.[2] At the time they met, Thompson was charged with various child pornography offenses in the District of Nevada and had been placed on house arrest.[3] Yoder helped Thompson break off his ankle bracelet and abscond to California, where Yoder paid for Thompson to stay in an apartment under the assumed name "Jason Brock."[4] Yoder also provided a vehicle to Thompson.[5]

Thompson, together with Yoder, then began attempting to recruit underage boys at a local skate park to join a fictitious competitive scooter club that Thompson claimed he

---

[2] *People v. John David Yoder*, 2018 WL 3062233, *1 (Cal. 2018).
[3] Presentence Investigation Report ("PSR") at ¶¶ 11-14.
[4] *Id.* at ¶ 15; *Yoder*, 2018 WL 3062233 at *1.
[5] PSR at ¶ 17.

intended to sponsor.[6] Yoder introduced Thompson to at least one of the friends of an autistic child for whom Yoder maintained a guardianship.[7] In an act of ultimate betrayal, Yoder sexually abused the child in his care.[8]

The underage boys who agreed to join Thompson's "team" would then go to Thompson's apartment, where they were sexually abused by Thompson, Monsivais, and Noland Harper.[9] Child pornography images and videos were also produced at the same apartment.[10] Throughout this time, Yoder continued to pay for Thompson's apartment. On at least one occasion, Yoder was present and engaged in sexual acts with a child while recording it.[11] Yoder also assisted in the distribution of child pornography images that Thompson produced.[12] In addition to paying for Thompson's apartment, Yoder offered up his own home as a "safe place" for his co-conspirators to sexually abuse their victims.[13]

As a result of these offenses, all of the above-named co-conspirators were arrested. Yoder was placed into state custody and proceeded to trial.[14] After being found guilty, he was sentenced to 24 years in prison.[15] He appealed his conviction and lost.[16] He was transported to this District to stand trial for his federal crimes. Erick Monsivais was likewise placed into state custody.[17] He pleaded guilty and agreed to cooperate against all

---

[6] *Yoder*, 2018 WL 3062233 at *1-2.
[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] *Id.* at *2, PSR at ¶ 21.
[12] *Id.* at *1-2, PSR at ¶ 22.
[13] *Id.*
[14] *Yoder*, 2018 WL 3062233, at *1.
[15] *Id.*
[16] *Id.*
[17] *Id.* at *1-2.

of the co-defendants charged in the State case.[18] Thompson was arrested federally and ultimately pleaded guilty to various federal child pornography offenses, including child exploitation enterprise, pursuant to a binding plea agreement and received a sentence of 354 months (29½ years), followed by lifetime supervision.[19] Noland Harper was arrested federally and pleaded guilty to child exploitation enterprise in the Eastern District of Virginia and received a sentence 292 months, followed by five years of supervised release.[20]

### III.     Points and Authorities

Pursuant to the binding plea agreement in this case, the government recommends that Yoder be sentenced to 240 months, to run concurrent with his sentence in RIF1501674, and a lifetime term of supervised release to follow with all of the terms listed in the presentence investigation report to be imposed. This sentence is "sufficient but not greater than necessary' to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence; to protect the public; and to provide the defendant with needed . . . correctional treatment."[21] This sentencing recommendation is also based on a consideration of "the nature and circumstances of the offense and the history and characteristics of the defendant," "the need for the sentence imposed," "the kinds of sentences available," the applicable sentencing guideline range, any pertinent policy statement, sentences imposed on other similarly situated defendants,

---

[18] All of the co-conspirators identified above are charged in the California state case. *See People v. John David Yoder*, Case No. RIF1501674.
[19] ECF Nos. 141, 155. Thompson was thereafter transported to California to face the state charges.
[20] *United States v. Noland Anthony Harper*, Case No. 3:15cr36-001, ECF Nos. 63, 223. Harper was thereafter transported to California to face the state charges.
[21] *United States v. Carry*, 520 F.3d 984, 991 (9th Cir. 2008) (quoting 18 U.S.C. § 3553(a)).

and the need for victim restitution.[22] After analyzing these relevant factors, the Court should impose a 240-month sentence.

First, a 240-month sentence, concurrent with Yoder's state sentence, fulfills the intent of the parties as expressed in the written plea agreement. The parties agreed to jointly recommend a sentence of 288 months (in itself a substantial variance from the guidelines range of life imprisonment) and also agreed to recommend that Yoder receive federal credit for the time he has spent in state custody as a further variance.[23] Accounting for that credit reduces Yoder's sentence to the mandatory statutory minimum sentence for child exploitation enterprise: 240 months.[24]

Although Yoder contends, multiple times, that the parties intended that his federal sentence be "coterminous" with his State sentence, he conveniently elides relevant context to give a clear picture of the parties' intentions.[25] From early on in the case, the government negotiated in good faith with defendant in an effort to reach an agreement that would not result in Yoder serving any additional federal time beyond his state sentence. Repeatedly, the government advised Yoder prior to entering his guilty plea that it would not and could not recommend a sentence lower than twenty years. Indeed, Yoder himself acknowledged in the very plea agreement he now asks this Court to follow that he **"understands that he cannot and will not receive a sentence that is lower than 20 years**

---

[22] 18 U.S.C. § 3553(a).
[23] ECF No. 173, pp. 13-14.
[24] *See* 18 U.S.C. 2252A(g) ("Whoever engages in a child exploitation enterprise shall be fined under this title and imprisoned for any term of year *not less than 20* or for life.") (emphasis added).
[25] The government does not provide the facts concerning negotiations in an effort to involve this Court in the plea discussions that occurred in this case (*see* Fed. R. Crim. P. 11(c)(1)), but instead feels compelled to correct the record pursuant to its duty of candor to the Court.

5

**in prison.**"[26] Repeatedly, the government advised Yoder that it was in his best interest to plead guilty early in the case and to move to sentencing in short order. But instead of taking heed of the government's advice, Yoder chose to delay negotiations to quibble with the facts supporting his guilty plea over the course of several months.

Then, because he had wasted so much time, after Yoder entered his guilty plea, the government advised him numerous times that it was in his best interest to proceed to sentencing in this case expeditiously, given the terms of the plea agreement and the mandatory minimum sentence he faced. Instead, Yoder again chose to nitpick through the presentence investigation report, making unfounded objections bordering on breaching the plea agreement. Only because of extensive conversations between the government and his counsel has Yoder thus far narrowly avoided breaching the terms of his agreement.[27] As a result, through Yoder's own actions and decisions, he now bemoans the fact that his sentence in this case will certainly result in his serving additional federal time. Any blame lies squarely with Yoder, and Yoder's unilateral mistake is not within this Court's capacity to remedy. However, to give meaning to the parties' intent as expressed in the written plea agreement, this Court should sentence Yoder to 240 months, and a lifetime term of supervised release.

Secondly, following the parties' recommendations in this case would also give appropriate weight to sentences imposed on the other co-conspirators in this case.

---

[26] ECF No. 173, p. 12 (emphasis in original).

[27] The desire to spare the victims in this case the humiliation of having to testify at trial about their sexual exploitation animated the government's unending patience in this case. This Court already saw at Thompson's sentencing the destructive effect the actions of the co-conspirators has had on the children involved. The children are still taunted by pedophiles owning pictures of their darkest days. The agreement in this case carefully balanced all these considerations.

6

Thompson was the ringleader of the child exploitation enterprise at issue and the most culpable. This is especially true when this Court considers that Thompson led the child exploitation enterprise while absconding from another criminal case in which he produced child pornography.[28] This Court sentenced Thompson to 354 months (29½ years), followed by lifetime supervised release.[29] Harper, who was 61 at the time of his sentencing and primarily handled the distribution of the child pornography that Thompson produced and also sexually abused some of the victims, was sentenced to 292 months, followed by five years of supervised release.

In comparing Yoder's conduct in this case with Thompson and Harper, the parties negotiated sentencing recommendation of 288 months custody (before the credit for state custody) is appropriate and avoids sentencing disparities. Further, the parties' agreement to credit Yoder's federal sentence for the time he has spent in state custody to the extent it is possible is consistent with the guidelines.[30] As such, the negotiated term of imprisonment should be imposed in this case.

Yoder provides as an exhibit a report completed in connection with his state hands-on prosecution.[31] That report includes a summary of Yoder's Static-99R assessment. However, this Court should not consider that assessment in this case. In the Coding Rules of the Static-99R, the authors indicate the Static-99R is not recommended in child pornography cases.[32] Additionally, the other significant problem with the Static-99R assessment is that it is calibrated on an absurd definition of recidivism. The same Coding

---

[28] *See* PSR at ¶¶ 11-14.
[29] ECF No. 155.
[30] *See* USSG 5G1.3(b).
[31] ECF No. 202, Ex. C.
[32] *See Static-99R Coding Rules Revised - 2016,* pp. 12-13.[32]

Rules define recidivism as "a new charge or conviction for a sex offense."[33] The criterion also indicates that half of the samples included in the normative data to develop the Static-99R scale was taken solely from convictions. As Judge Posner has noted, "[e]stimates of recidivism are bound to be too low when one is dealing with underreported crimes such as sex offenses."[34] Determining recidivism from charges and convictions misses the point, as the concern is and should be with *commission* of subsequent sex crimes, whether or not the offender is caught.[35] As such, the Static-99R on which Yoder relies is deeply flawed and should not be considered by this Court in imposing sentence.

Because Yoder has failed to meet his burden to show that these reports and the tests they rely upon have any indicia of reliability to support its probable accuracy, the Court should disregard or give no weight to any of the reports.[36] For example, Yoder includes a "Psycho-Social" Report written by a "veteran" with of the San Bernardino Probation Department which was submitted as part of his state case.[37] The report at Exhibit D concludes that Yoder is a "low risk" to reoffend.[38] However, the report is wholly devoid of any explanation as to the author's qualifications to come to such a conclusion based solely on his review of the trial transcripts, Yoder's work performance evaluations, interviews with Yoder and his family and friends, and an unspecified "psychologist's report." Interestingly, the report included as Yoder's Exhibit C specifically states that "[a]ccurate prediction of the risk of reoffense requires use of a risk assessment instrument based on research studies

---

[33] *Id.* at p. 7.
[34] *United States v. McIlrath*, 512 F.3d 421, 425 (7th Cir. 2008) (J. Posner).
[35] *Id.*
[36] USSG § 6A1.3.
[37] ECF No. 202, Ex. D.
[38] *Id.*

which followed released sex offenders and identified factors associated with those who reoffended," and "[r]esearch shows that the opinion of a professional after interviewing an offender is not an accurate way to predict whether a sex offender will reoffend."[39] In a normal case, the government would demand Yoder produce the underlying material associated with these reports as well as the make the people who prepared the reports available for cross-examination so that the government could lay bare the utter uselessness of these tests in this type of case. However, because these reports are so patently useless on their face, and given the parties are both recommending the Court impose the mandatory statutory minimum sentence, the government only requests that the Court disregard or give them no weight at the time of sentencing.

       The government also requests this Court imposed the agreed-upon lifetime term of supervised release. Given Yoder's conduct in this case, it is important that he remain supervised for the rest of his life following any release from custody. Yoder's involvement in the pedophilia culture and his successful efforts to identify and conspire with other like-minded individuals is especially concerning and warrants a lifetime term of supervised release. Moreover, Yoder's propensity to lure children with developmental disabilities under the guise of providing those children with care only to sexually abuse them demands that Yoder be monitored closely for the remainder of his natural life.

       The government also asks that this Court impose all of the proposed conditions of supervised release included in the PSR. The government notes that proposed condition seven prohibits Yoder from having direct contact with any child he knows or reasonably should know to be under the age of 18, including his own children, without the permission

---

[39] ECF 202, Ex. C.

of his probation officer. To prohibit Yoder's contact with his own children, this Court must make specific factual findings that the condition is appropriately tailored to accomplish one or more of the factors listed under 18 U.S.C. 3583(d)(1).[40] Here, the government submits that the fact that Yoder sexually abused an 11-year-old autistic child and used that child to help lure and entice other minor children all while Yoder was the victim's legal guardian warrants imposition of the condition as proposed. This is especially appropriate given Yoder's letter to this Court, in which he minimizes his involvement in this case and even unabashedly attempts to paint himself as a savior who sought to help society's "throw away" children and "troubled" boys.[41] In fact, Yoder is every parent and child's worst nightmare. Given Yoder's conduct in this case, he should not have unmonitored access to even his own natural children.[42]

---

[40] *United States v. Wolf Child*, 699 F.3d 1082, 1091-92 (9th Cir. 2012).
[41] ECF No. 202, Ex. B.
[42] The government notes and acknowledges that as of this time, Yoder does not have any natural children, but has two adult children whom he adopted. PSR at ¶ 84-87.

## IV. Conclusion

An examination of the factors under 18 U.S.C. 3553(a), including the nature and circumstances of the instant offense, the history and characteristics of Yoder, the applicable sentencing guideline range, any pertinent policy statement, and sentences imposed on other similarly situated defendants, warrants imposition of the sentence recommended by the parties in this case. Thus, the government asks that this Court accept the binding plea agreement and sentence Yoder to 240 months incarceration, concurrent with his state case, with a lifetime term of supervised release to follow.

Dated this the __9th__ day of January 2021.

Respectfully Submitted,

NICHOLAS A. TRUTANICH
United States Attorney

*/s/        Christopher Burton*
CHRISTOPHER BURTON
Assistant United States Attorney